**TAYBRON, Robert, Appellant,**

v.

**Patricia HARRIS, as Secretary of Health, Education & Welfare, Appellee.**

**No. 81–1389.**

United States Court of Appeals, Third Circuit.

Argued Oct. 13, 1981.

Decided Dec. 22, 1981.

Kenneth E. Walker (argued), Freeman & Bass, Newark, N. J., for appellant.

Mary Catherine Cuff, Asst. U. S. Atty., Deputy Chief, Civ. Div. (argued), William

W. Robertson, U. S. Atty., Maryanne T. Desmond, Asst. U. S. Atty., Newark, N. J., for appellee.

Before HUNTER, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

Robert Taybron appeals from an order of the district court affirming a final determination by the Secretary of Health and Human Services ("The Secretary"; "HHS") that he is ineligible for Social Security disability benefits under the Social Security Act, 42 U.S.C. § 301 et seq. (1976). Taybron's claim was denied after a hearing before an Administrative Law Judge ("ALJ"), who concluded that Taybron was not disabled within the meaning of 42 U.S.C. § 423(d) (1976).[1] The ALJ's decision became final after it was approved by the Secretary's Appeals Council.[2]

Taybron then filed suit in district court, pursuant to 42 U.S.C. § 405(g) (1976), seeking review of the Secretary's decision. The Secretary moved for summary judgment; the district court granted the motion, ruling that the Secretary's denial of Taybron's claim was supported by substantial evidence. The issue before us is whether the Secretary's denial of plaintiff's disability claim is supported by substantial evidence on the record taken as a whole. For the reasons discussed below, we will vacate the decision of the district court and remand this case to the Secretary for entry of an order consistent with this opinion.

FACTS

Taybron, presently 34 years old, worked for a moving company in Montclair, New Jersey. On March 10, 1977, he injured his back while trying to lift a 1500 pound piano onto a mover's dolly. Record at 106. After the accident, Taybron was examined by the company doctor, who advised Taybron that he could continue working. Record at 106–107. Taybron worked until August 11, 1977, when the severity of his pain forced him to quit. He has not worked since.

After he left his job, Taybron spent most of the next ten weeks in the hospital for treatment of his back injury. His back injury was initially diagnosed as lumbosacral sprain. Record at 162. A laminectomy was performed September 21, 1977. The post-operative diagnosis disclosed the existence of several herniated discs in Taybron's lower back. Record at 165.

The surgery did not eliminate Taybron's back pain. Shortly after the operation was performed, Taybron was readmitted to the hospital with complaints of pain and stiffness in his lower back. The diagnosis was post-laminectomy syndrome. Record at 168.

Taybron's subsequent medical history indicates that his back pain persists and is exacerbated by stomach pain, caused by the chronic ingestion of aspirin and other pain medications, and depression, apparently a reaction to his physical condition. Taybron's medical record also indicates that movement in his lower back and legs is restricted.

In the years after his injury Taybron was examined by numerous specialists. We note briefly the findings that are pertinent.

---

**1.** Disability is defined as: "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A) (1976).

The test of whether the claimant's ailment constitutes a disability within the meaning of the statute is two-pronged:

[A]n individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. Id. § 423(d)(2)(A).

**2.** See 20 C.F.R. § 404.981 (1981).

Taybron was examined by two orthopedic surgeons. Dr. I. Ahmad, who examined Taybron twice, noted that Taybron suffered from, *inter alia*, lumbosacral sprain, fibromyositis and radiculitis. Record at 171, 173. Dr. Ahmad concluded initially that Taybron's impairment amounted to 60% of a total disability; he later concluded that Taybron was totally disabled. Record at 173. Dr. A. Glushakow noted that Taybron suffered from post-laminectomy syndrome and concluded that Taybron was unable to perform manual labor. Record at 179–180.

Taybron was also examined by an internist, Dr. Catalino De La Cruz, Jr. Dr. De La Cruz noted that Taybron was suffering from chronic low back pain and sciatica, caused by his vertebral injury. Record at 184. Dr. De La Cruz observed that while there were no objective symptoms of pain, the subjective symptoms could be severe enough, in a case like Taybron's, to preclude gainful employment. He concluded that "[m]ore thorough neurological evaluation like nerve conduction studies may be in order." *Id.*

Taybron's stomach disorders were evaluated by a gastroenterologist, Dr. V. Groisser, and an internist, Dr. S. Friedman. Both doctors agreed that Taybron suffered from gastroduodenitis caused by the medication Taybron ingested to relieve his chronic low back pain. Record at 160–161; 181–182. Dr. Friedman estimated that Taybron's stomach ailment amounted to a disability of 25 percent. Record at 182.

Dr. R. Latimer, a psychiatrist, also examined Taybron. His diagnosis was that Taybron was suffering from a severe depressive reaction to his back injury. He concluded that "[a]s an industrial unit he [Taybron] should be considered totally disabled...." [3] Record at 176.

Taybron continues to undergo therapy to alleviate the pain in his back. He goes to an outpatient clinic three times a week to receive heat and massage treatments. Record at 57. He wears a back brace three to four hours daily and he takes an assortment of medications.[4]

Taybron has a seventh grade education. He reads and writes with difficulty; his mathematical skills are poor. Taybron testified that he has worked all his life, first as a farm hand and then, ever since he was 15, as a manual laborer. Record at 86. He moved to New Jersey in 1970 and worked in the moving business for the seven years prior to his injury. Record at 104. He has no other job skills. Aside from his visits to the clinic, Taybron's daily activities include watching television and, on occasion, making trips to the store. Record at 110.

A hearing was held before the ALJ on June 6, 1979, at which Taybron was the only witness. He was represented by counsel. After the hearing the ALJ found that Taybron's injury prevented him from performing his previous employment or any other heavy manual labor. Record at 64. The ALJ noted that Taybron was in pain, but found that his pain was not severe enough to preclude work. The ALJ concluded, therefore, that Taybron had the functional capacity to perform sedentary work and that Taybron, accordingly, was not disabled, as defined by the Social Security Act.

DISCUSSION

In reaching the conclusion that Taybron's pain did not prevent him from working, the ALJ relied chiefly on the medical report of Dr. De La Cruz, which stated that he could find no objective symptoms to support Taybron's complaint of pain. We find, however, that Dr. De La Cruz's report is too inconclusive to justify the ALJ's reliance upon it. Dr. De La Cruz concluded his report by stating that "[m]ore thorough neurological evaluation like nerve conduction studies may be in order." Record at 184. Read in context, therefore, it is clear

3. On two occasions, Taybron was treated for taking an overdose of pain pills. Record at 196–208. After the first incident he was diagnosed as suffering from a character disorder. Record at 196–197.

4. These medications are: Percodan, Darvocet-N 100, Valium 5 mgs., Librax, Tylenol, Mylanta, Tagament and Co-Pyronil. Record at 57.

that Dr. De La Cruz's statement regarding the absence of objective signs of pain was meant to be tentative, contingent upon additional medical testing.

We have noted that the claims of those entitled to Social Security disability benefits are extremely important: "the claimants, who are in real need in most instances . . . claim not charity but that which is rightfully due as provided for in . . . the Social Security Act." *Hess v. Secretary of Health Education and Welfare*, 497 F.2d 837, 840 (3d Cir. 1974). In view of this concern, we have held that a claimant is entitled to a hearing that resolves all doubts about the claimant's right to disability benefits. *Id.* at 841.

■ Complaints of disabling back pain are among the most difficult types of claims to resolve with any degree of certainty. Pain in itself may be a disabling condition. *Smith v. Harris*, 644 F.2d 985, 988 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). We have on other occasions said that "even pain unaccompanied by objectively observable symptoms which is nevertheless real to the sufferer and is so intense as to be disabling will support a claim for disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971) *quoting Ber v. Celebrezze*, 332 F.2d 293, 299 (2d Cir. 1964). *See also Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978). Disability claims based on pain are also difficult to resolve because proof of pain is often made by means of subjective evidence. *See Bit-*

*tel*, 441 F.2d at 1195; *De Paepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972).

For these same reasons such claims are ·equally difficult to review on appeal.[5] But in order to perform our function responsibly and in order to insure that the claimant gets the thorough consideration of his claim to which he is entitled, we believe every effort should be made to secure any medical evidence that would help resolve doubts about the outcome of the claim.

As it now stands, the evidence in this case is too inconclusive to support the ALJ's findings. Dr. De La Cruz's report is too tentative to refute all the other medical evidence and Taybron's own testimony that he is disabled.[6] The extent of the pain and its effects on employability are not clear to us on this record.

### CONCLUSION

■ For the foregoing reasons, we find that on this record the decision of the Secretary that Taybron is not disabled is not supported by substantial evidence. Therefore, we vacate the decision of the district court and remand the case to the Secretary for entry of an order, directing the ALJ to complete the record with a more thorough neurological evaluation of the appellant's condition, including nerve conduction studies and the ALJ should thereafter file his findings and supplemental determination.

---

5. This court's standard of review is whether there exists substantial evidence in the record to support the Secretary's findings. 42 U.S.C. § 405(g). Under this standard the question is whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). *See also Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).

6. We have previously addressed the issue of how to assess the credibility of a claimant's

testimony about disabling pain. Testimony of subjective pain is entitled to weight if it is supported by competent medical evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Furthermore, when the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility. *Dobrowolsky*, 606 F.2d at 409. Taybron meets this criterion. Every doctor who examined Taybron acknowledged he was in great pain. Taybron's work record shows that he worked steadily in the twelve year period prior to his accident. His testimony, therefore, is entitled to substantial credibility.