DECISION
The appellant, Eneida Camacho ("Appellant"), seeks reversal of the April 30, 2001 decision of the Rhode Island Department of Human Services ("DHS"). In its decision, DHS denied Appellant's application for Medical Assistance ("MA") benefits. Appellant seeks either a reversal of the DHS decision denying her benefits, or, in the alternative, remand of the case to the agency. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel 
On November 17, 2000, Appellant, a fifty-two-year-old female with a thirty-year work history as a sewing machine operator, applied for MA benefits. Appellant completed and submitted an AP-70 form (Information for Determination of Disability) in which she listed and described her medical problems, including "3 disc[s] out of place — pinch nerve — spinal block — soft tissue in my left kidney — artherides [sic]." See AP-70 at 1. Appellant stated that she was unable to conduct normal household activities and had trouble sleeping due to "lots of pain in [her] back." Id. at 3. She also stated that she needed personal assistance to get around and for daily personal activities, including bathing and dressing. Id. In November 2000, Dr. Mansourati completed a medical form, MA-63, regarding Appellant's application for benefits. Also, his primary diagnosis was "lumbar disk herniation" "low back pain, limitation of RDM" "CT of lumbar spine — L3-4/L4-5 hernia" "chronic back pain, long term mgmt." Dr. Mansourati also noted that the Appellant suffered chronic arthritis of the knees and anxiety/panic attacks. With respect to her functional limitations, he found Appellant was limited to one hour of walking, standing, reaching or bending, and two hours of sitting. Also, he found Appellant could not lift ten pounds. Dr. Mansourati recommended further evaluation and physical therapy. Another MA-63 form dated February 2, 2001 was completed by Dr. Vibhakar, who found that "medications help in reducing condition to a great deal" and recommended follow-ups with an orthopedic doctor and medical doctor as well as physical therapy. Dr. Vibhakar's diagnosis consisted of "spondylosis L3-4 L4-5 OA Knees anxiety state" and "pain in low back knees." However, he found that her functional limitations had improved such that she could walk for six hours, reach for four hours, and sit, stand and bend for two hours. Also, he stated she could lift ten pounds for four hours and stand and sit intermittently for four hours.
In addition, the Medical Assistance Review Team ("MART") obtained two consultative examinations performed in August and September 2000 at the request of Donald Lacasse of the Social Security Disability Determination Services. One report was prepared by Dr. Steven McCloy who stated that in making a determination about the Appellant's medical condition, he reviewed "her x-rays, her x-ray reports, EMG reports and scanned her laboratory information." (Report at 2.) While Dr. McCloy "noted" that Appellant "ha[d] an MRI scan performed in January of 1998. . . . show[ing] annulus at L3/4 and L4/5 with no actual herniation of the disk," it does not appear that he had the opportunity to examine the actual films. Id. Dr. McCloy wrote that when distracted Appellant "was able to bend forward from the waist and flex to 90 degrees. This was noted when she arranged the stool prior to stepping up onto the bed. In addition, she was able to pick up her purse with a forward flexion from the waist." Id. Moreover, Dr. McCloy stated that Appellant had a "4 out of 5 positive Waddell findings." Id. at 3. Based on his review, he deemed that although "[t]he patient has a history of low back problem. She has no positive physical findings today to suggest a lumbar disk problem or neuropathy. Chronic low back pain, however, would expect to have some effect on her ability to do heavy lifting. It should not affect her ability to sit, stand, walk, or lift, except for the painful portion of it. Performing these activities (necessary to everyday life) would not put her at material risk." Id.
The record does contain the report regarding the MRI and CT Scan performed in 1998 on Appellant's lumbar spine though it does not appear that these records were part of Dr. McCloy's review. The report of the CT Scan of the lumbar spine states that "[t]here is evidence of mild anterior lumbar spondylosis. Mild diffuse broad base bulging annulus is seen at L3-L4 and a left posterolateral bulging annulus is seen at L4-L5." The MRI report states "[s]tudy compatible with degenerated disc, narrowing of the disc space and bulging annulus fibrosus with left posterior disc herniation and compression of the dural sac and left nerve root at L4-L5. There is also bulging annulus fibrosus at L3-L4."
The other consultative examination was performed by Dr. Nina B. Nizetic who found that "although [Appellant's] symptoms suggest a panic disorder, as presented, they did not meet the defining criteria. — Claimant also complained of short periods with depressed mood, feelings of isolation, and diminished concentration. Her depressive symptoms did not meet the criteria for a specific depressive disorder." Finally, other medical records reviewed included documents from Notre Dame Hospital Ambulatory Services.
On February 6, 2001, Appellant received a denial notice that stated she was ineligible for MA benefits because she did not "meet the eligibility characteristic of total disabled as set forth in the DHS Manual, Sec.(s) .0352." Appellant appealed and appeared with a representative from Rhode Island Legal Services, Inc. at the administrative hearing on March 22, 2001. The record of the hearing remained open for one week to allow Appellant to submit post-hearing memorandum. Appellant submitted a March 19, 2001 medical record from the Memorial Hospital of Rhode Island in Pawtucket, Rhode Island. This record was completed by Dr. Guzman who found the Appellant suffered from chronic back pain, anxiety, depression, [and] sciatic nerve. There was no residual functional capacity available from Dr. Guzman.
On April 31, 2001, DHS Appeals Officer Kathleen M. Rechter upheld the agency's prior decision that Appellant was ineligible for MA benefits and in her decision stated:
 "[i]t is my conclusion, based on a careful review of testimony and evidence, that the determination of the MART is correct. The appellant does not meet the criteria for a finding of Permanent and Total disability. Based on the available medical record, there is no finding of a listed impairment or combination of impairments which would be severe and would be reasonably expected to prevent the appellant from engaging in substantial gainful activity." (Decision at 11.)
Appellant filed a timely appeal from the decision rendered by DHS. On appeal, Appellant argues that DHS's decision denying her MA benefits was based upon error of law and was inconsistent with federal law. Appellant requests that this Court reverse DHS's decision or, in the alternative, reverse and remand the case to the agency.
 Standard of Review 
The standard of review for this Court's appellate consideration of a decision of the Department of Human Services is governed by G.L. 1956 § 42-35-15(g), which provides, as follows:
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 1) In violation of constitutional or statutory provisions;
 2) In excess of the statutory authority of the agency;
 3) Made upon unlawful procedure;
 4) Affected by other error of law;
 5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of an agency, a justice of the Superior Court may not substitute his or her judgment for that of the agency on issues of fact or as to the credibility of testifying witnesses. Mercantum FarmCorp. v. Dutra, 572 A.2d 286, 288 (R.I. 1990) (citing Leviton Mfg. Co.v. Lillibridge, 120 R.I. . 283, 291, 387 A.2d 1034, 1038 (1978)); Centerfor Behavioral Health, Rhode Island, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998). This Court must uphold an agency decision where substantial evidence exists on the record to support it findings. Baker v. Departmentof Employment and Training Board of Review, 637 A.2d 360, 366 (R.I. 1994) (citing DePetrillo v. Department of Employment Security, 623 A.2d 31, 34 (R.I. 1993); Whitelaw v. Board of Review, Department of EmploymentSecurity, 95 R.I. 154, 156, 185 A.2d 104, 105 (1962)).
"Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Newport Shipyard v. Rhode Island Commission forHuman Rights, 484 A.2d 893, 897 (R.I. 1984) (citing Caswell v. GeorgeSherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the Court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981). Thus the Superior Court is required to uphold the agency's findings of fact and conclusions of law if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island Labor RelationsBoard, et al., 650 A.2d 479, 485 (R.I. 1994).
 Department of Human Services 
Within the executive branch of state government, the Rhode Island Department of Human Services is the agency entrusted with the management, supervision and control of various social service programs, including state and federally funded public assistance programs. G.L. 1956 § 42-12-1 et seq. One such program, the Medical Assistance Program, is administered by the DHS according to the standards of eligibility set forth in G.L. 1956 § 40-8-3. "This program furnishes funds for certain medical services for needy families with dependent children and to aged, blind, or disabled persons who may be categorically or medically needy as defined by the federal statutes or the state program." Carrillo v. Rohrer, 448 A.2d 1282, 1283 (R.I. 1982).
Title XIX of the Federal Social Security Act sets forth the provisions of the medical assistance program. 42 U.S.C. § 1396, et seq. "The purpose of the Medicaid program is to furnish medical assistance to disabled individuals who are without funding to meet the necessary medical costs." Social Security Act, § 1910, as amended,42 U.S.C. § 1396. The state and federal governments are empowered to create laws and regulations regarding the eligibility criteria for this needs based program. 42 U.S.C. § 1396 et seq. and G.L. 1956 §40-5-1, et seq. DHS is required to use the guidelines established by the United States Secretary of Health and Human Services when determining if an individual is disabled and thus eligible for MA benefits.
 Eligibility Standards 
Appellant first argues that DHS's determination that she was ineligible for medical assistance benefits was based on the application of the wrong legal standard and a failure to abide by the federally mandated five-step evaluation process. Appellant further asserts that the hearing officer improperly defined "treating physician," which provided the basis for the mistaken evaluation of the evidence presented by Appellant regarding her physical condition. Also, Appellant states that the hearing officer failed to properly assess her pain and, in particular, failed to afford her testimony substantial credibility. DHS responds that it reviewed and relied upon the evidence in arriving at its conclusion that Appellant was not eligible for MA benefits. DHS maintains that it applied the proper standards and procedure in arriving at its decision and its denial of benefits to Appellant should be affirmed.
The DHS Policy Manual sets forth the procedure for determining an individual's eligibility for medical assistance benefits. Section 0352.15 provides that:
 "[t]o be eligible for Medical Assistance because of permanent and total disability, a person must have a permanent physical or mental impairment, disease or loss, other than blindness, that substantially precludes engagement in use occupations . . . within his/her competence . . . For purposes of eligibility, an individual is disabled if s/he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve (12) months. . . . Statements of the applicant, including the individual's own description of the impairment (symptoms) are, alone, insufficient to establish the presence of a physical or mental impairment."
Moreover, Section 0352.25.05 of the DHS Policy Manual states that whether an impairment constitutes a disability is
 "determined from all the facts of that case. Primary consideration is given to the severity of the individual's impairment. Consideration is also given to such other factors as the individual's age, education and work experience. Medical consideration alone can justify a finding that an individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or other slight abnormalities. On the other hand, medical considerations alone . . ., can except where other evidence rebuts a finding of `disability,'e.g., the individual is actually engaging in substantial gainful activity, justify a finding that the individual is under a disability where the impairment is one that meets the duration requirement, and is compatible with impairments recognized by the Social Security Administration."
Under the federal program, the Secretary of Health and Human Services has established a five-step sequential evaluation process to determine whether an individual is disabled. These regulations pose the following questions:
 "1. Is the claimant engaged in a substantial activity?
 2. If not, is the impairment(s) severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment(s) prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience, and "residual functional capacity," does the impairment(s) prevent the claimant from doing other work in the national economy?" See 20 C.F.R. § 416.920
(1997).
This evaluation process was discussed by the Supreme Court in Bowen v.Yuckert, 482 U.S. 137, 140-141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119, 126-127 (1987), where it wrote:
 "[s]tep one determines whether the claimant is engaged in `substantial gainful activity.' If he is, disability benefits are denied. . . . If he is not, the decisionmaker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the `severity regulation' at issue in this case. . . . If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. . . . If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. . . . If the claimant cannot perform this work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work."
DHS follows this "set order" when evaluating a disability claim.20 C.F.R. § 416.920. Thus, the agency may conclude its inquiry "at any point in the review" by making the determination that the applicant is not disabled. Id. At this point, the evaluation ceases and the agency "does not need to review the claim further." Id.
In the instant case, Appellant contends that the hearing officer erred when she determined that Appellant's impairments were not severe based on a finding that Appellant's back problems did not meet the musculoskeletal listed impairments. Appellant argues that the hearing officer improperly evaluated the severity of her impairment by examining whether her physical ailment met or equaled a listed impairment as provided in the guidelines established for evaluation of musculoskeletal conditions. DHS maintains, however, that the hearing officer applied the correct legal standard in step two of the evaluation process as evidenced by her "complete analysis of the medical records" that were submitted. (Def.'s Mem. of Law at 10.) As stated previously, under step two of the severity regulation, "[i]f the claimant does not have a severe impairment or combination of impairments, the disability claim is denied." Yuckert, 482 U.S. at 140, 107 S.Ct. at 2291, 96 L.Ed.2d at 126. The severity regulation adopts a standard for determining the threshold level of severity — the impairment must be one that "significantly limits [one's] physical or mental ability to do basic work activities." Id. at 153 n. 11. The inquiry at step two permits only those claims based on trivial impairments to be rejected. Holley v. Chater, 931 F. Supp. 840, 844 (S.D.Fla. 1996). Thus, step two of the evaluation process required the hearing officer to determine whether Appellant's impairment was severe. It is not until step three that it becomes necessary to assess whether an impairment meets or equals an impairment listed in the SSI regulations.
However, in the instant case, after discussing and weighing the various medical reports submitted, the hearing officer found that "[t]he medical record does not support that the appellant has a medically documented listed impairment." (Decision at 11.) Moreover, the hearing officer wrote "[b]ased on the available medical record, there is no finding of a listed impairment or combination of impairments which would be severe and would be reasonably expected to prevent the appellant from engaging in substantial gainful activity." Id. DHS proceeded to answer the inquiry posed in step three of the evaluation process in its effort to resolve the question raised in step two of the process, whether Appellant's impairment was severe. Thus, DHS improperly proceeded to step three before completing step two thereby failing to follow the sequential order of the five-step evaluation process. Accordingly, the hearing officer's determination that Appellant's condition was not severe was based on an error committed in step two of the five-step sequential evaluation process.
Appellant further argues that DHS improperly defined "treating physician" to mean current primary physician which led to an evaluation of Appellant's medical records that was inconsistent with the federal law. At the hearing, Appellant's representative, Mr. Lopez, identified Drs. Mansourati and Vibhakar as Appellant's treating physicians. (Tr. at 25.) In addition, when questioned by the hearing officer regarding who was her treating physician, Appellant responded "[r]ight now, Dr. Guzman at Notre Dame Hospital. She's my primary doctor." (Tr. at 25.) However, the hearing officer discounted the medical records submitted by these physicians and accorded greater weight to the consultative examinations conducted by Drs. McCloy and Nizetic.
According to SSI regulations, a "[t]reating source means your own physician or psychologist who has provided you with medical treatment or evaluation and who has or has had an ongoing treatment relationship with you." 20 C.F.R. § 416.902. A "treating physician can give the longitudinal, detailed picture of a plaintiff's medical status that cannot be obtained from a consultative examination or a short term or a one time evaluation by a non-consultative examination or any other medical source." Casher v. Halter, 2001 U.S. Dist. LEXIS 5343 (citing 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2000)). A physician who has examined the claimant once cannot be considered a treating physician within the meaning of the regulations. See Isako v. Apfel, 2001 U.S. App. LEXIS 2993 (9th Cir. 2001); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986);Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2nd Cir. 1983); Selig v.Richardson, 379 F. Supp. 594, 601 (D.C. N.Y. 1974); Tritt v. Richardson,320 F. Supp. 871, 875 (D.C. Va. 1970). See also, 70A Am.Jur.2d SocialSecurity and Medicare §§ 719-721 (1987).
In the instant case, Drs. Guzman, Mansourati and Vibhakar cannot be considered Appellant's treating physicians because none of these doctors had an ongoing relationship with Appellant. As noted by the hearing officer, the only information contained in Appellant's medical records from Dr. Guzman was a March 19, 2001 Pawtucket Memorial Hospital record. (Decision at 7.) Also, Appellant had minimal contact with Drs. Mansourati and Vibhakar. Id. at 8. The hearing officer found that "[a] close examination of the record reveals that the physicians identified by Mr. Lopez as `treating physicians' were each seeing the appellant for the first time when the respective MA-63 was completed." Id. Given this finding, the hearing officer chose to give the consultative exams performed by Drs. McCloy and Nizetic greater weight in its assessment of Appellant's disability. The hearing officer considered these physicians "specialists" who had "examine[d] the appellant." Id. In addition, the hearing officer remarked that the MART review cited Dr. McCloy, Medical Director of Occupation Health and Rehabilitation Services, as an "expert." Id. The hearing officer found significant conflicts in the medical reports submitted by Drs. McCloy, Mansourati and Vibhakar regarding the appellant's functional capacity. (Decision at 9.) The hearing officer wrote that the evaluations differed so significantly that "[e]ither the appellant was significantly improved from the 11/20/00 evaluation or the two physicians disagree on the RFC." Id.
The hearing officer is "responsible for determining credibility and resolving conflicts in medical testimony." Magallanes v. Bowen,881 F.2d 747, 751 (9th Cir. 1989). The instant case presents a similar situation to that in Isako v. Apfel, 2001 U.S. App. LEXIS 2993 (9th Cir. 2001), where the Ninth Circuit held that a single visit by the claimant to a certain psychiatrist did not establish an ongoing treatment relationship. The psychiatrist was not a "treating source," and his "opinion was therefore not entitled to special weight." Id. The court held that the "opinions of all three examining psychiatrists . . . are entitled to the same presumptive weight." Id. In the instant case, Appellant testified that she was examined once by Dr. McCloy for "about ten minutes" and by Dr. Nizetic for approximately "twenty minutes." (Tr. at 32-34.) Thus, neither Dr. McCloy nor Dr. Nizetic had an ongoing treatment relationship with Appellant such that either could be considered Appellant's treating physician. Their opinions as to Appellant's condition were entitled to the same presumptive weight afforded the opinions of Drs. Guzman, Mansourati, and Vibhakar. Thus DHS erred in giving the medical reports submitted by Drs. Mansourati, and Vibhakar "less weight in consideration as the consultative exams done by Dr. McCloy and Dr. Nizetic." (Decision at 8.) Moreover, this Court finds the agency's contention that the opinions of Drs. McCloy and Nizetic were entitled to greater weight because they are "specialists" and/or "experts" unavailing given that the record is devoid of any evidence that Drs. McCloy and Nizetic are specialists or experts in their fields. Although DHS correctly held that none of the physicians relied upon by Appellant could be considered treating physicians, the agency nonetheless erred in attaching greater weight to the findings made and conclusions reached by Drs. McCloy and Nizetic.
Finally, Appellant's argument that DHS failed to properly assess her pain because the agency did not afford Appellant's testimony substantial credibility is reflected in the record. See Tayborn v. Harris,667 F.2d 412, 415 n. 6 (3rd Cir. 1981) ("[W]hen the claimant has worked for a long period of time his testimony about his work capabilities should be afforded substantial credibility."); Powdedworny v. Harris,745 F.2d 210, 217 (3rd Cir. 1984) ("In the instant case appellant's testimony about the pain he was experiencing is entitled to even more substantial weight because it is unlikely that absent such pain he would have quit a job at which he was working for about thirty-two years."). In the instant case, given that Appellant worked as a sewing machine operator for almost thirty years, her claims of pain due to lower back problems were entitled to substantial credibility. It should be noted that an AP-65 form states that Appellant had a "strong work history as a sewing machine operator." Aside from this brief notation, however, there is nothing in the decision rendered by the hearing officer to indicate that Appellant's lengthy work history was given the consideration it was due. The decision states that Appellant testified that she "had an eight[h] grade education. [and] [u]pon questioning she indicated that she had completed her GED." (Decision at 7.)
 Conclusion 
After review of the entire record, this Court finds that the substantial rights of the Appellant have been prejudiced because the DHS decision was in violation of statutory provisions and was affected by error of law. Accordingly, the DHS decision is vacated, and this matter is remanded to the appeals officer for reevaluation of entitlement to benefits consistent with this decision.
Counsel shall submit the appropriate order for entry.