NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 09-2430

———

THOMAS L. BRYAN,
                              Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 07-2121)
District Judge: Honorable A. Richard Caputo

———

Submitted Under Third Circuit LAR 34.1(a)
February 2, 2010

Before: MCKEE and HARDIMAN, Circuit Judges, and POLLAK,[*] District Judge

(Filed:  June 4, 2010)

———

OPINION

———

———

[*]  Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

POLLAK, <u>District Judge</u>.

Appellant Thomas L. Bryan appeals the order of the United States District Court for the Middle District of Pennsylvania affirming the Social Security Commissioner's denial of his claim. The Administrative Law Judge ("ALJ") who originally evaluated the claim found that Bryan retained the residual functional capacity to perform his past work and so denied his application for Social Security Disability Insurance ("SSDI") benefits. On appeal, Bryan argues that the Commissioner: (1) erred in failing to accord controlling weight to the opinion of his treating physician; (2) failed to properly evaluate Bryan's subjective complaints and credibility; and (3) improperly relied on a hypothetical question to the vocational expert which did not contain a description of all of Bryan's ailments.

We will affirm in part and reverse and remand in part.

I.

A. Procedural History

Bryan applied for SSDI benefits on October 2, 2004, alleging that he required disability benefits as of April 13, 2003. This disability claim was based on: "heart by-pass surgery, stroke, glaucoma, arthritis of the wrists, back problems, diabetes, high cholesterol, hypertension, memory problems, and 'ticking' in his left ear."[1] Bryan's claim for benefits was denied. A hearing was held before Administrative Law Judge Douglas A. Abruzzo on July 13, 2006 and continued on January 18, 2007. On March 13, 2007, the

---

[1] This condition is also known as tinnitus.

ALJ denied Bryan's application for SSDI benefits on the ground that only one of Bryan's ailments constituted a "severe impairment," and despite that impairment Bryan retained the "residual functional capacity" to undertake certain types of work. Bryan sought review of this decision from the Appeals Council of the Social Security Administration, which denied his request on September 17, 2007.

On November 20, 2007, Bryan filed an action in the District Court for the Middle District of Pennsylvania seeking review of the denial of his application for benefits. Magistrate Judge Mannion issued a Report and Recommendation on October 15, 2008 recommending denial of Bryan's complaint. The District Court adopted the Report and Recommendation by order on March 12, 2009. Bryan now appeals that order to this court.

## B. Facts[2]

Plaintiff Thomas Bryan was born on April 21, 1943. Throughout his life he has been employed as a production controller, machine operator, tester and stock person. On September 23, 2002, Bryan was admitted to the hospital subsequent to being rear-ended in a motor vehicle accident. Medical records from that day show that Bryan complained about "mild back pain," felt "stiff and sore," but did not suffer from any difficulties in his upper or lower extremities and had "full active range of motion of all the joints." R. 192-

---

[2] Because we write only for the parties, we assume they are familiar with the facts and do not discuss them in detail.

2

193. However, x-rays from the accident revealed that Bryan was suffering from "degenerative disc disease" in his spine. R. 268. On October 7, 2002 Bryan followed up with his treating physician, Dr. Hester, complaining that he was experiencing a throbbing sensation in his head, back pain, and memory and concentration difficulties. R. 369. Bryan's complaints about lower back pain and weakness in his lower extremities continued through 2003. R. 199-211. Records from Bryan's visit with Dr. Hester on February 25, 2003 show that he was suffering from a clicking sensation in his right ear, emotional lability,[3] hypercholesterolemia, Type 2 diabetes, hypertension, and lower back pain caused by degenerative disc disease. R. 315-16. Throughout late 2002 and 2003 Bryan received various forms of medical treatment, including physical therapy. On October 2, 2004, Bryan filed a protective application for disability benefits alleging that he had become unable to engage in substantial gainful employment as of April 13, 2003.

In November 2004, Dr. Gregory Bailey performed lumbar decompression surgery on Bryan. R. 383. Shortly after the surgery, Bryan reported that his back condition had improved and that he was not feeling any leg pain. R. 404. Then, in March 2005, Bryan met with a physical therapist and reported that he was again experiencing lower back pain and had a limited tolerance for standing and walking. R. 399.

---

[3] According to Social Security regulations, "emotional lability" is an "organic mental disorder" whose symptoms include "explosive temper outbursts or sudden crying, and impairment in impulse control." 20 C.F.R. Part 404 Subpart P Appx 1 (Listings) § 12.02(A).

## II. Statutory Framework

Social Security regulations provide that a claimant is eligible for disability benefits if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). "[T]o decide whether [a claimant is] disabled" the ALJ engages in a "five-step sequential evaluation process." 20 C.F.R. §§ 416.920(a)-(f). At Step One, the ALJ must determine whether the claimant is working or engaged in a substantial gainful activity. 20 C.F.R. §§ 416.920(b). If the claimant is not working or engaged in a substantial gainful activity, the ALJ next determines at Step Two whether the claimant is suffering from a "severe impairment which significantly limits his or her physical or mental ability to do basic work activity." 20 C.F.R. § 416.920(c). If the claimant does not suffer from a "severe impairment," a finding of not disabled is required. *Schaudeck v. Commissioner of Social Sec. Admin.*, 181 F.3d 429. 431 (3d Cir. 1999). If Step Three is reached, the ALJ must ascertain whether this "severe impairment meets or equals criteria" set forth in the Social Security regulations listed in appendix 1 to subpart P of part 404. 20 C.F.R. § 416.920(a)(iii). If the ailment meets these standards, the claimant is considered disabled. If the claimant's alleged disability is not listed in the Social Security regulations, the ALJ moves on to Step Four, where he determines whether the claimant has the "residual functional capacity" to perform his prior job. 20 C.F.R. §

4

416.920(a)(iv). "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)). If the claimant can still undertake his "past relevant work," a finding of not disabled is directed. Finally, if Step Five is reached, the ALJ must determine whether, considering the claimant's residual functional capacity, age, education, and work experience, the claimant can engage in any other work available in the national economy. 20 C.F.R. § 416.920(a)(v).

The ALJ assigned to Bryan's case concluded that Bryan was not engaged in substantial gainful activity, thus satisfying Step One. At Step Two, he concluded that Bryan suffered "degenerative disc disease of the lumbar spine with the residual effects of a lumbar decompression and fusion" and further found that this condition constituted a "severe impairment." However, with regard to the other ailments that Bryan claimed–(1) cardiac condition; (2) diabetes; (3) glaucoma; (4) tinnitus in the left ear; (5) wrist conditions; (6) hip pain; and (7) emotional problems–the ALJ determined that none of these alleged disabilities qualified as a "severe impairment" under the standards listed in 20 C.F.R. § 404.1520(d).

Thus, only Bryan's application for disability benefits based on "degenerative disc disease of the lumbar spine" survived Step Two. At Step Three, the ALJ found that Bryan's impairments did not meet or exceed the criteria listed in Appendix 1 of the Social Security Regulations. Accordingly, the ALJ proceeded to Step Four, where he is required

5

to determine whether the claimant retains the "residual functional capacity" to perform his prior job. At Step Four, the ALJ concluded that, despite the disc ailment, Bryan was "able to perform his past relevant work as a production control/shipping order clerk, packing machine operator, and tester" and was not eligible for disability benefits. In arriving at that conclusion, the ALJ relied on several pieces of evidence: (1) a physical examination performed in October 2002; (2) an x-ray from September 2002; (3) an MRI performed in November 2002; (3) an MRI performed in May 2003; (4) an MRI performed in 2004; (5) progress reports from Bryan's treatment at a pain management clinic; (5) Bryan's complaints to an orthopedist in August 2004; (6) a physical examination performed in September 2004; (7) a lumbar decompression and fusion procedure Bryan underwent in November 2004; (8) Bryan's statements to an orthopedist in March 2005; (9) X-rays performed in June 2005; (10) statements made by Bryan in June 2005; (11) statements made by Bryan in January 2005; (12) statements made by Bryan to his physical therapist in October 2003; (13) statements made by Bryan in December 2005; (14) records showing Bryan's participation in physical therapy; (15) Bryan's work record; and (16) the testimony of a vocational expert. The ALJ further concluded that Bryan's "statements concerning the intensity, duration, and limiting effect of [his] symptoms are not entirely credible and are generally inconsistent with the totality of the evidence" and decided that Dr. Hester's opinion would not be "provided controlling weight."

6

III.

Under the Social Security Act, a district court should accept the decision of the Commissioner of Social Security if it is "supported by substantial evidence." 42 U.S.C. § 405(g). A court of appeals reviews the Commissioner's final decision under the same standard of review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971). In determining whether substantial evidence exists, we cannot re-weigh the evidence or substitute our own judgment for that of the ALJ. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Thus, we will uphold the Commissioner's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the "substantial evidence" standard is satisfied. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

IV.

Plaintiff argues on appeal that there is not substantial evidence supporting the ALJ's determination that he was ineligible for disability benefits. He also disputes the ALJ's decision not to give Dr. Hester's testimony controlling weight.[4] As a threshold

---

[4] The ALJ cited four reasons for his decision: (1) Dr. Hester was a specialist in "internal medicine and no specialist such as an orthoepist or neurologist has provided any limitations;" (2) Dr. Hester "did not provide any evidence to substantiate his opinion;" (3) Dr. Hester stated in the January 2007 RFC assessment that "the clinical and objective findings from physical examinations have revealed the claimant does not experience any significant limitations;" and (4) Bryan's "activities of daily living are inconsistent with an individual who experienced such debilitating symptoms."

matter, we conclude that–even if Dr. Hester's testimony had been given controlling weight–there is substantial evidence for the ALJ's determination that the following alleged disabilities claimed by plaintiff were not "severe:" disability due to stroke, cardiac bypass, hypertension, diabetes, glaucoma, clicking sensation in his left ear, arthritis in his wrists, and emotional problems. We address these claims first.

The ALJ concluded that Bryan's diabetes and glaucoma did not constitute a "severe impairment;" there is sufficient evidence in the medical reports supporting this finding. After examining the medical record, the ALJ concluded that "the documentary medical evidence does not contain references to diabetic neuropathy, retinopathy, acidosis, or significant and persistent disorganization of functioning resulting in disturbance of gross or dexterous movements or gait and station." Bryan's own treating physician noted in 2004 that Bryan's diabetes "was sub-optimally controlled but he was not having any complications." The ALJ also consulted a 2005 report from an ophthalmologist who explained that Bryan was receiving eye drops for glaucoma and that he had "20/20 uncorrected visual acuity in both eyes." Thus, we conclude that there was substantial evidence for the ALJ's decision that Bryan's diabetes was not disabling.

The ALJ also denied Bryan's claim that his emotional problems qualified as a disability, finding that they did not meet the definition of a mental health impairment as defined in SSR 86-4p. While Dr. Hester's May 2003 report stated that Bryan "experienced emotional lability," the ALJ observed that "the documentary medical

8

evidence does not contain any references to symptoms of a mental health impairment and the evidence does not reveal the claimant has ever been referred for treatment or been prescribed medication." Bryan confirmed at the hearing that he had never been treated by any doctors for mental health or emotional difficulties, and was never referred to any psychiatrists or psychologists. R. 61. With regard to his emotional difficulties, Bryan testified that Dr. Hester told him that he had "some emotional problems," namely "if I hear something, you know something sad or something like that, I get real emotion, you know upset." R. 60. Given the paucity of evidence showing that Bryan was diagnosed with, or suffered from, any mental health problems–including his own testimony–we conclude that the ALJ's determination is supported by substantial evidence.

The ALJ also concluded that the "clicking sensation in [Bryan's] left ear" did not qualify as a "severe disability." The ALJ noted that Bryan's physician stated in September 2003 that Bryan suffered "moderate and high frequency sensorineural hearing loss," but his condition had been stable since March 2003. In May 2004, Dr. Hester again noted that Bryan's hearing was stable and that "he only had left high frequency sensorineural hearing loss." Neither of these reports confirms the presence of a "ticking sensation." The ALJ also relied on the fact that treatment notes from other doctors did not refer to any hearing problems or difficulties conversing. In the Residual Functional Capacity Questionnaire ("RFC") where Dr. Hester was asked to list Bryan's "impairments," he made no reference to clicking or tinnitus. R. 426. Bryan testified at

9

the hearing that the "ticking" "bothers [him]" and leads him to take sleeping pills. R. 64. However, in December 2004, Bryan reported to the Social Security Administration that about a month ago his "ear ticking has stopped." R. 174. Therefore, we conclude that there was substantial evidence for the ALJ's decision.

Next, Bryan argues on appeal that there is insufficient evidence for the ALJ's non-disability finding regarding his wrist and hand pain. We disagree–there is substantial evidence to support the ALJ's finding that Bryan's wrist and hand limitations were not disabling. The ALJ noted that Dr. Hester reported in May 2002 that Bryan "experienced chronic bilateral wrist pain and has tenderness and limited range of motion." In the January 2007 Residual Functional Capacity questionnaire, Dr. Hester reported that Bryan suffered from "arthritis in the wrists and numbness in his fingers." However, the ALJ concluded that progress reports contained in the medical reports did not substantiate this finding and did not mention Bryan dropping objects or being "referred for diagnostic studies or to a specialist."

The medical records substantiate the ALJ's finding. On September 13, 2004, a comprehensive exam was conducted by Dr. Bailey, who noted that Bryan suffered from leg pain in his left leg, a dull ache in his thigh and calf, numbness on the top of his foot, and had trouble walking and standing. R. 409. The report stated that Bryan had undergone wrist surgery in the past, but did not mention any current wrist or hand problems. The report found that Bryan "does not appear to be in any acute distress . . .

10

[and] ambulate[s] with a steady, narrow-based gait. . . . is able to stand on his toes and heels without difficulty." R. 409. A progress report dated August 29, 2006, noted that Bryan complained about "discomfort in his left ankle . . . and across the distal part of his left foot" and increased swelling in his feet. R. 435. The physical exam showed no edema in Bryan's extremities but some soreness between his toe bones. R. 436. The absence of any complaints or findings with regards to Bryan's hand and wrist is significant, considering the attention paid to his other extremities. Accordingly, there is little to substantiate Dr. Hester's January 2007 RFC stating that claimant suffered from arthritis and numbness in his hands. Accordingly, we conclude that there is substantial evidence for the ALJ's non-disability finding with regard to this impairment.[5]

Finally, there is sufficient evidence on this record supporting the ALJ's finding that Bryan's cardiac conditions do not constitute a "severe" disabling impairment. In arriving at that conclusion, the ALJ relied on three different medical reports. An April 2004 report from Dr. Henry, Bryan's cardiologist, stated that Bryan was "clinically stable without any recent angina, congestive heart failure, or tachyarhymthmia." R. 290. The evaluation further noted that Bryan was "doing well from a cardiac standpoint" and

---

[5] Plaintiff argues that the ALJ's hypothetical to the VE was incomplete in that the ALJ did not list all of the limitations described by Dr. Hester. Because we find that there was substantial evidence for the ALJ's conclusion that Bryan's hand and wrist problems were not disabling, we also conclude that the hypothetical question to the vocational expert was appropriate. An ALJ need not include "every impairment alleged by a claimant;" instead we require the ALJ to "accurately convey to the vocational expert all of a claimant's credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

11

denied "any chest pains, tachypalpitations, syncope, near syncope, orthopnea, PND or perpheral edema." R. 290. Dr. Henry wrote that Bryan stated that he "[o]verall has been feeling well other than chronic back pain." R. 290. Tests conducted in May 2004 interpreted by Dr. Sheldon showed that "[t]here are no stress induced wall motion abnormalities to reflect ischemia" and revealed that Bryan had adequate heart rate and blood pressure. R. 288. When Bryan met with his cardiologist in July 2006 and complained about experiencing angina, an echocardiogram and stress test "revealed the claimant achieved 90 percent of his age-predicted maximum heart rate, had appropriate blood pressure response, had no echocardiogram changes, and showed no stress-induced wall abnormalities to suggest ischemia." R. 433. His cardiologist opined that Bryan was "clinically stable." R. 433. This objective medical evidence is substantial enough to support the ALJ's finding.

Lastly, we turn to the ALJ's consideration of Bryan's degenerative disc disease, which he concluded was a "severe impairment" within the meaning of the Social Security regulations but did not bar Bryan from engaging in past forms of employment. We are troubled by two aspects of the ALJ's decision. First, the ALJ decision does not properly take account of Bryan's testimony regarding his daily activities. Second, the ALJ fails to mention significant medical evidence that directly contradicts his conclusion that Bryan was no longer suffering from significant pain. The ALJ has an obligation to "consider all evidence before him" when he "mak[es] a residual functional capacity determination,"

12

and must also "mention or refute . . . contradictory, objective medical evidence" presented to him. *Burnett*, 2002 F.3d at 121. Failure to do so may constitute reversible error. *Id.*

After examining Bryan's medical records and his subjective complaints of pain, the ALJ concluded that Bryan's statements "concerning the intensity, duration, and limiting effect of [Bryan's] symptoms are not entirely credible and are generally inconsistent with the totality of the evidence."[6] The ALJ's observation relied heavily on Bryan's "Work History Report" application to the Social Security Administration, completed in January 2005, and Bryan's testimony during the hearing, which the ALJ characterizes as follows:

> The claimant subsequently reported in January 2005 he lived in a trailer with his wife and son and performed limited driving, cooked, performed very little housework and repairs, and went grocery shopping and had to rest while shopping but could carry two light grocery bags. The claimant testified [at the hearing] he cooks, occasionally drives short distances and drives approximately 60 miles a week and 250 miles a month, can fill the dishwasher, takes out the trash, goes shopping for about an hour, could plant flowers, reads the newspaper and magazines, watches television, and visits another person one to two times a month.

Thus, the ALJ concluded, "Bryan's activities of daily living are . . . inconsistent with an individual experiencing such debilitating symptomatology."

However, the transcript of Bryan's hearing testimony reveals that his daily

---

[6] The Commissioner argues on appeal that Bryan's reports that he was building a house shows that Bryan was more active than he alleged. Bryan argues that the Commissioner misconstrued Bryan's statements. This is irrelevant because the ALJ did not rely on, or even refer to, Bryan's building activities in his decision, and we are limited on appeal to reviewing the ALJ's decision for substantial evidence.

functioning was more limited than the description provided by the ALJ. Bryan testified that he could take out the trash if "it was not too heavy" which he calculated as a "couple of pounds." R. 82. He takes out only "kitchen trash" such as "paper and stuff" but relies on his garbage disposal for anything heavier. R. 82. He testified that he could no longer engage in woodworking, shoot a gun, or draw a bow. R. 82-83. He takes pain pills when he has to drive a long distance. R. 66. He can cook to the extent that he can prepare a microwave dinner or a sandwich. R. 65. He can bathe and dress himself but has difficulty tying his shoes and must be "careful getting in and out of the tub and shower." R. 65. He could "probably" dust a table but cannot sweep with a broom, mop the floor, or vacuum a rug. R. 67. He cannot do laundry because "grabbing the clothes and switching around and stuff and bending over" is a challenge because he has trouble bending over. R. 67. He can go grocery shopping "if [he has] pain pills" and even then, can only "go get a few items and run down to the little store and get the paper or something." R. 68. When he is grocery shopping he relies on the grocery cart for physical support. R. 68. In response to the question "Do you, are you able to do any of the following, plant flowers, cut grass or trim hedges," Bryan responded "I can't trim hedges, I don't think I can cut flowers, because I can't squeeze very good with my hand. . . . Plant flowers, probably would be I could probably plant flowers." R. 68. He testified that he watches television for most of the day and keeps it on while he is sleeping. R. 69.

While it is true that Bryan can cook, take out the trash, go grocery shopping, fill

the dishwasher, and drive, his testimony describes additional limitations that the ALJ did not mention. In addition, the ALJ's decision does not mention the activities Bryan explicitly states he *cannot* undertake: doing laundry, cutting grass, trimming hedges, shooting a gun, and drawing a bow. He used to make "Shaker boxes" but can no longer use his hands that way. R. 72. He uses his hands and knees to climb stairs. R. 73-74. He cannot manipulate the buttons on his clothing. R. 81. Failure to take into account specific parts of Bryan's testimony gives us pause. In *Baerga v. Richardson*, we "express[ed] concern:"

> over the brief treatment given by the examiner in evaluating the evidence. [The ALJ] did not address himself to the testimony of plaintiff and his wife concerning plaintiff's pain, his alleged inability to dress himself or bathe, his limitations on sitting, standing, and walking, as well as other restrictions caused by his extensive hip and leg deformities. As fact finder he has the right to reject their testimony entirely, but failure to indicate rejection could lead to a conclusion that he neglected to consider it at all.

500 F.2d 309, 311 (3d Cir. 1974).

In addition, in determining that Bryan's self-reported activities of daily living are inconsistent with the medical records, the ALJ focused extensively on medical records relating to Bryan's back condition *prior* to the lumbar surgery.[7] The ALJ failed to cite to

---

[7] The ALJ relied on diagnostic studies performed in 2003 and 2004 which "generally revealed fairly good range of motion, no gross motor or sensory deficits, full strength of the lower extremities, negative straight leg raising, and a normal gait." The ALJ also relied on the fact that, following the November 2004 surgery, Bryan's orthopedist stated that Bryan was "doing fairly well without leg pain, had back stiffness only with overuse, and had a steady gait, with 5/5 strength of the lower extremities." The ALJ noted that Bryan had participated in physical therapy in 2003 and 2005 and received steroid injections as part of

evidence contained in the record that contradicted his conclusion that Bryan was no longer suffering from significant pain. *Burnett*, 2002 F.3d at 121 (ALJ's "failure to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination" may be reversible error). First, the same exhibit the ALJ cited for the proposition that the Oxycodone had been effective in ending Bryan's pain shows that, in December 2005, Bryan was prescribed "Tramadol," a prescription pain killer, to take "as needed." R. 188. The ALJ also inferred from the fact that Bryan was no longer receiving steroid injections that the pain management treatment had been effective. However, a medical report signed by Dr. Bailey and dated September 13, 2004 explains that Bryan was forced to stop receiving the steroid injections because they raised his blood glucose level, which his diabetes could not tolerate. R. 407.

In fact, medical reports dated *after* Bryan's lumbar surgery contain objective evidence that he still suffered from pain. An "Initial Evaluation/Plan of Care" by a physical therapist dated March 14, 2005–approximately five months after Bryan's lumbar surgery–states the following:

> The patient ambulates with a slow moving gait. . . . He can transfer sit to standing currently, though is very slow and guarded. Active range of motion of the lumbar

his pain management treatment, but had not received any pain management treatment since 2004. Finally, the ALJ inferred that, because Bryan had taken Oxycodone for only one year and then switched to a non-narcotic pain reliever, the medication must "have been effective in controlling his symptoms."

16

spine flexion 75% limited with finger knee level with pain on extension. Rotation left is 75% limited; right 50% limited. . . . Hip range of motion to the left is approximately 95 degrees with pain. Internal and external rotation is within normal limits with end range pain on the left. . . .

R. 401. This 2005 report provides objective support for Bryan's claims about experiencing pain and having difficulty moving.[8] An ALJ is under an obligation to give "great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." *Schaudeck v. Commissioner of Social Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979)). In this case, Bryan has provided objective and subjective evidence regarding the extent of his back pain, and, because this evidence was not properly addressed by the ALJ, we have doubts about the certainty of the ALJ's determination. We have noted before that "[c]omplaints of disabling back pain are among the most difficult types of claims to resolve with any degree of certainty." *Taybron*, 667 F.2d at 415. Because of the difficulty of ascertaining disability claims based on back pain, "we believe every effort should be made to secure any medical evidence that would help resolve doubts about the outcome of the claim." *Id.*

V.

---

[8] The March 2005 progress report also contains subjective descriptions of Bryan's complaints. He stated that he suffered from pain in his left buttock and left back and had limited tolerance for standing such that he could stand for only five minutes at a time. Additionally, his ability to ambulate was limited as he was only able to walk around the house and to his truck.

17

The Report and Recommendation of the Magistrate Judge, adopted by the District Court, is well reasoned and hence is sustained, with respect to Bryan's: (1) cardiac condition; (2) diabetes; (3) glaucoma; (4) tinnitus in the left ear; (5) wrist conditions; and (6) emotional problems. With regard to the ALJ's finding that Bryan still had the residual functional capacity to perform his former employment despite his degenerative disc disease of the lumbar spine, that finding was not adequately supported by the evidence on this record. Accordingly, we will reverse that part of the District Court's order and remand to the District Court with directions to remand the matter to the Commissioner for further proceedings not inconsistent with this opinion.